**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO. 4:14-mj-0102-MSH |
| | : | |
| VINCENT SWANN, | : | |
| | : | |
| Defendant. | : | |

_____

## ORDER ON MOTION TO SUPPRESS

Presently pending before the Court is Defendant's motion to suppress and exclude evidence in limine.  (ECF No. 8.)  The Court held a hearing on the motion on September 17, 2014 and reserved ruling on the motion until the parties could fully brief the issues. Defendant filed his brief on October 28, 2014 (ECF No. 19), the Government responded on November 3, 2014 (ECF No. 20), and Defendant filed a Reply on November 12, 2014 (ECF No. 21).  The motion being ripe for review, the Court finds that there was probable cause to stop Defendant, that the stop was not unreasonably extended, and that Defendant gave consent to the searches which led to the discovery of the incriminating evidence at issue.  Defendant's motion is therefore denied.

### FINDINGS OF FACT

Defendant is charged with two counts of possession of a controlled substance in violation of 21 U.S.C. § 844.  (Information, ECF No. 1.)  Defendant urges the Court to exclude and suppress the evidence obtained during a traffic stop of Defendant's vehicle on October 4, 2013.  (Mot. to Suppress 1.)  There is no material dispute over the facts and

circumstances surrounding the traffic stop and subsequent searches.

At roughly 6:30 a.m. on October 4, 2013, Officer Valdes, an officer with Fort Benning Department of Emergency Services, initiated a traffic stop of Defendant's vehicle on Fort Benning due to a cracked windshield.[1]  (Tr. 4-6.)  Officer Valdes approached the vehicle on the passenger side and noted that Defendant appeared "more nervous than a normal person would be on a traffic stop," based upon Defendant's hands shaking and heavy breathing.  (Tr. 7.)  Officer Valdes inquired as to why Defendant was nervous, and Defendant stated that he was nervous because he was late for work.  (*Id.*) Officer Valdes then followed up by asking Defendant whether he had ever been arrested, and Defendant stated that he had and was at that time on probation for possession of drug paraphernalia.  (*Id.*)  Officer Valdes then requested back-up and while awaiting back-up asked Defendant to step out of the vehicle and Defendant complied.  (Tr. 8.)

Officer Valdes then initiated a computer background check on Defendant, which came back that Defendant "had a clean record."  (Tr. 18.)  Despite the background check results, Officer Valdes informed Defendant that due to his nervousness and admitted probation status he wished to search Defendant's vehicle, and Defendant told Officer Valdes that "he had no problem with it."  (Tr. 8.)  Officer Valdes testified that from the time he initiated the traffic stop to the point where he requested consent to search the vehicle was roughly eleven to twelve minutes.  (Tr. 36.)

Prior to searching the vehicle, Officer Valdes told Defendant that he needed to pat

---

[1]     Defendant does not dispute that Officer Valdes had sufficient probable cause to initiate the traffic stop due to Defendant's cracked windshield.

him down, and Defendant submitted to a pat down search of his person.  (Tr. 9.)  When

questioned about weapons, Defendant volunteered that he had a knife in his right front

pocket and Officer Valdes asked if he could retrieve it.  (Tr. 9-10.)  After Defendant gave

verbal consent, Officer Valdes put his hand on Defendant's right front pocket and

Defendant pulled away.  (Tr. 10.)  For his own safety, Officer Valdes then put Defendant

into handcuffs because he knew Defendant had a knife.  (*Id*.)  Officer Valdes then placed

his hand over the pocket again and felt a hard object that was not a knife, and Defendant

stated that it was cocaine.  (*Id*.)  Officer Valdes removed the knife and the hard container

and observed that it contained a white substance.  (Tr. 11.)  Another officer then arrived

at the scene and conducted a search of the vehicle.  (*Id*.)  During that search, three bags of

marijuana were found.  (Tr. 60.)

## CONCLUSIONS OF LAW

Defendant argues that the evidence obtained from his person as well as the search

of his vehicle should be suppressed and excluded because they were the result of an

illegal search in violation of the Fourth Amendment.  The Government contends that the

search was conducted lawfully with the voluntary consent of Defendant and therefore the

evidence obtained is admissible.

## I.    Legal Standard

"[O]nce an officer has briefly stopped a motor vehicle operator for the purpose of

issuing a traffic violation (*i.e.*, a ticket)," the Fourth Amendment permits the officer to

detain the vehicle's occupants "only if the officer can point to 'specific and articulable

facts which, taken together with rational inferences from those facts, reasonably warrant

the intrusion.'"  *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999) (quoting *United States v. Griffin*, 109 F.3d 706, 708 (11th Cir. 1997) (per curiam)).  The detention must "last no longer than is necessary to effectuate the purpose of the stop," and "the scope of the detention must be carefully tailored to its underlying justification.'"  *Id.* at 1220 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

Generally, this rule allows an officer conducting a routine traffic stop to obtain the "driver's license and vehicle registration, run a computer check [on the license and vehicle], and issue a citation."  *Id.* at 1219.  Prolonging the detention for additional questioning beyond that related to the initial stop is permissible if: (1) the officer "has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring," or (2) "the initial detention has become a consensual encounter."  *Id.* at 1220.  Where consent to search is given, only the portion of the stop prior to the grant of consent is relevant to the inquiry of whether the duration was unconstitutional.  *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001).

Furthermore, a court evaluating a traffic stop for Fourth Amendment analysis must do so "in the context of the totality of the circumstances."  *Id.*  Thus, if an officer asks the driver of a vehicle questions that are completely unrelated to the initial stop, that does not necessarily convert the stop to an unconstitutional detention.  *Id.* at 1280.  The key is whether the unrelated questions prolong the stop.  As long as the unrelated questions are asked during the process of obtaining legitimate information for citation purposes, such questions by suspicious officers are permissible.  *See id.* (finding that police may question occupants about subjects unrelated to motor vehicle stop while computer license

4

check is in progress or while citation is being prepared).  More recently, the Supreme Court reiterated that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

## II.     Officer Valdes' unrelated inquiries did not measurably extend the duration of the stop.

Defendant first argues that Officer Valdes prolonged the traffic stop by asking him about his arrest history, making him step out of the vehicle, requesting back-up, taking his license, and conducting the computer search.  (Def.'s Br. 5-6.)  Defendant cites *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003), for the proposition that conducting a vehicle history check and background search is outside the scope when it is unrelated to the purpose of the stop and not akin to the officer's routine procedure for a routine traffic stop investigation.  (Def.'s Br. 5.)  *Purcell*, however, states that "[t]he officer may also prolong the detention to investigate the driver's license and the vehicle registration, and may do so by requesting a computer check."  236 F.3d at 1278 (citations omitted).  This proposition, also cited in *Boyce*, does not include the requirement that the running of the computer check be the officer's routine procedure.  Therefore, taking Defendant's license and conducting the computer search was permissible under *Purcell*. Furthermore, the Supreme Court has squarely held that any inconvenience caused by asking a driver to exit his vehicle is *de minimus* when compared to the issue of the safety of both driver and officer.  *Pennsylvania v. Mimms*, 434 U.S. 106 (1977).  This step is

also not an extension of the routine traffic stop.

The question then becomes whether inquiring about Defendant's arrest status and waiting for back-up "measurably extend[ed] the duration of the stop," such that the stop was converted into "something other than a lawful seizure." *Johnson*, 555 U.S. at 333. Officer Valdes testified that the traffic stop, from initiation of his blue lights to his request to search Defendant's vehicle, took approximately twelve minutes.  (Tr. 36.) Officer Valdes' back-up arrived during or shortly after this twelve minute period.  (Tr. 40-41.)  Although the act of asking additional unrelated questions and waiting for back-up unquestionably took more time than if Officer Valdes had not taken those steps, the Court finds that these additional actions did not "measurably extend the duration of the stop" because the total amount of time was not unreasonable under the circumstances.

The Eleventh Circuit stated in *United States v. Hernandez*, 418 F.3d 1206 (11th Cir. 2005), a case in which a seventeen minute stop was found reasonable, that "[e]ven *if* seventeen minutes is some minutes longer than the norm, we question whether the Fourth Amendment's prohibition of unreasonable seizures is concerned with such trifling amounts of time."  418 F.3d at 1212, n.7.  This stop was a mere twelve minutes in length prior to Defendant's consent to search the vehicle.  Any extension of the duration of the stop is *de minimus*.

Defendant's cited cases are distinguishable.  In *United States v. Digiovanni*, 650 F.3d 498 (4th Cir. 2011), the Fourth Circuit held that the officer unreasonably prolonged the detention by failing to diligently investigate the reason for the initial stop.  However, that officer, unlike Officer Valdes, "embarked on a sustained investigation into the

presence of drugs in the car." *Id.* at 510.  It can hardly be said that Officer Valdes'
actions in requesting back-up and asking a single question about Defendant's arrest
history was a "sustained investigation," especially where the entire encounter prior to
consent lasted a mere twelve minutes.  Similarly, in *United States v. Blair*, 351 F.3d 1102
(11th Cir. 2003), the Sixth Circuit held that the officer extended the duration of the stop
by calling a canine unit to the scene.  Officer Valdes' actions did not extend the length of
the stop to the same extent as calling a canine unit would have.

## III.    Defendant granted consent to search the vehicle.

Defendant also argues that "there is no reason to believe Mr. Swann or a
reasonable man in his position would have understood or believed he had a choice to
refuse to stay and reject any searches."  (Def.'s Br. 8-9.)  The factors, none being
dispositive, relevant to determining the voluntariness of consent to search include: (1) the
voluntariness of the defendant's custodial status, (2) the presence of coercive police
procedure, (3) the extent and level of the defendant's cooperation with police, (4) the
defendant's awareness of his right to refuse consent to the search, (5) the defendant's
education and intelligence, and, (6) the defendant's belief that no incriminating evidence
will be found.  *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

The Court finds that Defendant's consent to search his vehicle was given freely
and voluntarily.  Officer Valdes testified that when he requested to search the vehicle,
Defendant stated "he had no problem with it."  (Tr. 8.)  Although Defendant had
indicated previously that he was concerned about being late for work, there was no
evidence that he reiterated that concern at the time of consent.  There was also no

evidence that Officer Valdes threatened Defendant or acted in a confrontational manner. Defendant was not in handcuffs at the time of the request for consent.  Furthermore, the testimony showed that Defendant was cooperative with the officers during the search and even helped locate keys to a locked box.  (Tr. 60.)

Defendant is correct that Officer Valdes did not specifically inform Defendant that he was free to refuse consent.  However, this factor is not dispositive and the government is not required to prove that Defendant was aware of the right to refuse consent.  Viewing the totality of the circumstances, it is clear that Defendant voluntarily consented to the search of his vehicle, and therefore Defendant's motion to suppress the marijuana found therein is denied.

## IV.  Officer Valdes likewise received consent to search Defendant's person, or alternatively conducted a valid *Terry* frisk of Defendant's person.

Defendant likewise contends that the pat-down of Defendant's clothing that turned up the container of white powder was an invalid search.  (Def.'s Br. 8-9.)  There is some dispute as to whether Officer Valdes asked Defendant to submit to the pat down search or told Defendant that he was required to conduct the search.  (Gov't Br. 2; Def.'s Br. 2.) Officer Valdes stated that he told Defendant that he "was going to conduct a Terry frisk/pat-down, and [Officer Valdes] needed his consent."  (Tr. 26.)  Officer Valdes then testified that Defendant granted him consent.  (*Id.*)  Officer Valdes also testified that prior to starting the search, Defendant offered up the fact that he was carrying a knife, and at that point Officer Valdes' "whole focus was to remove that knife from his pocket at that time."  (Tr. 32.)

Once Defendant admitted that he was carrying a dangerous weapon, Officer Valdes clearly had sufficient "reasonable belief or suspicion" to conduct a *Terry* frisk of Defendant to remove that weapon from Defendant's control. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). At that point, Defendant's consent to the pat-down was no longer required. During that legitimate *Terry* frisk, Officer Valdes felt the hard container and asked Defendant what it was. Again, Defendant volunteered the information, and Officer Valdes had sufficient cause to remove the item that had been identified to him to be a controlled substance. The Court finds that the search of Defendant's person was therefore lawfully conducted, and Defendant's motion to suppress the methamphetamine[2] found in Defendant's pocket is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress and exclude in limine (ECF No. 8) is denied.

SO ORDERED, this 20th day of November, 2014.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court notes the discrepancy between the Government's allegation that the white powder located in the hard container in Defendant's pocket tested positive as methamphetamine and Defendant's statement to Officer Valdes that the substance was cocaine.